IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*        Case No.  1: 10  - CR - 590    [GLS]

UNITED STATES OF AMERICA

                                                                          GOVERNMENT'S SENTENCING
                                                                          MEMORANDUM

                         v.

JAMES BROWN,

                         Defendant.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

        The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, hereby files its sentencing memorandum as to

defendant James Brown.

# I

## INTRODUCTION

        On November 21, 2011, the defendant pleaded guilty to all 5 counts of a five-count

Indictment.  There is no plea agreement in this case.  Defendant pleaded guilty to the following

charges: Conspiracy to Produce Child Pornography, Title 18, United States Code, Section 2251(a)

& (e) [Count 1 of the Indictment];  Production of Child Pornography, Title 18, United States Code,

Section 2251(a) & (e) [Counts 2 & 3 of the Indictment];  Transporting Material Involving the Sexual

Exploitation of a Minor, Title 18, United States Code, Section 2252(a)(1) [Count 4 of the

Indictment];  and, Accessing with Intent to View/Possession of Child Pornography, Title 18, United

States Code, Section 2252(a)(4)(B) [Count 5 of the Indictment].

## II

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.      Statutory Maximum and Minimum Sentence**

The defendant's convictions on Counts 1, 2, and 3 subject the defendant to a statutory maximum term of 30 years and a statutory mandatory minimum term of 15 years imprisonment on each of the three counts.   The defendant's conviction on Count 4 subjects the defendant to a statutory maximum term of 20 years and a statutory mandatory minimum term of 5 years imprisonment.   The defendant's conviction on Count 5 subjects the defendant to a statutory maximum term of 10 years and no statutory mandatory minimum term.

The maximum statutory imprisonment that the Court can impose is 120 years (the statutory maximum on each of the 5 counts imposed consecutively).   The minimum statutory imprisonment that the Court can impose is 15 years (the statutory mandatory minimum on count 1 or 2 or 3).

**2.      Guidelines Provisions**

**a.      Plea Agreement**

There is no plea agreement.   Defendant pleaded guilty to the entire Indictment.

**b.      Total Offense Level And Guidelines Calculations**

The government agrees with the guidelines scoring and criminal history scoring as set forth in the Presentence Investigation Report (PSR).   Defendant's Total Offense Level is a level 44. Pursuant to U.S.S.G. section 5A, a total offense level of 44 is to be treated as an offense level of 43. The PSR scores defendant's criminal history as a Criminal History Category of V.   Defendant's guidelines imprisonment range is therefore LIFE imprisonment.

Additionally, U.S.S.G. section 5G1.2, "Sentencing On Multiple Counts Of Conviction", is implicated in this case.  Defendant stands convicted of counts 1 through 5 of the Indictment. Pursuant to U.S.S.G. section 5G1.2, this Court has the power and the authority to fashion a consecutive sentencing structure to achieve the "total punishment" of Life imprisonment as called for by the advisory guidelines.  If the Court determines that a guidelines sentence is appropriate, the Court has the authority to impose consecutive sentencing on multiple counts of conviction.

**c.    Facts and Information Contained in the PSR**

The government agrees with all the facts and information contained in the PSR.

The facts, information, and details as set forth in the PSR accurately reflect defendant Brown's conduct; background; and criminal history.  We recommend that the Court adopt all the facts and information contained in the PSR.

**d.    Criminal History Category**

According to the PSR, the defendant's criminal history category is a V.  The government agrees with the PSR calculations and determination of the defendant's criminal history category as being a V.

**III**

**BRIEF SUMMARY OF THE FACTS**

From 2008 through December of 2010, James Brown was Kayla Morey's boyfriend.  In 2008, James Brown was on parole in New York state.  In and about October of 2008, Brown's parole was revoked and Brown was sent back to New York state prison.  Between October of 2008 and through December of 2010, Brown remained in New York state prison.  While Brown was in

New York state prison, Brown and Morey regularly communicated and maintained their relationship by way of correspondence/letters and telephone communications.

In 2010, Kayla Morey resided in the Rensselaer County, New York area. Morey had a minor daughter with the initials A.M. who was approximately five years old at the time. Morey also had access to and contact with three other female minors with initials P.W., A.W., and F.W., who were approximately 8 months old, three years old, and four years old, respectively at the time. All four female minors resided in and around the Rensselaer County, New York area.

From about March of 2010 through December of 2010, James Brown and Kayla Morey knowingly and intentionally combined, conspired, confederated, and agreed with each other to use, persuade, induce, and entice minors A.M., P.W., A.W., F.W., and other minors, to engage in sexually explicit conduct for the purpose of photographing and videotaping such conduct. James Brown and Kayla Morey conspired and agreed with each other that defendant Kayla Morey, acting on instructions, directions, and encouragement received from defendant James Brown from New York state prison, would use James Brown's Samsung cellular telephone digital camera in order to videotape and photograph minors A.M., P.W., A.W., F.W., and other minors, engaged in sexually explicit conduct. In letters and telephone calls from New York state prison, James Brown instructed, directed, and encouraged Kayla Morey to take photographs and videos of minors naked with their legs spread apart and vaginas spread open. Brown instructed, directed, and encouraged Morey to photograph and videotape the minors engaged in sexually explicit conduct using Brown's cellular telephone camera so that when Brown was released from New York state prison, Morey could present him with the photographs and videos of the minors for his enjoyment and pleasure. At that time, Brown was expecting to be released and paroled from New York state prison toward the end

**Page 4**

of 2010 and wanted the photographs and videos of the minors engaged in sexually explicit conduct waiting for him when he arrived home.  Brown told Morey that when he got out of prison and arrived home, he wanted to and intended to have sex with some of the minors/children while Morey participated in the acts.  In his letters and in his telephone conversations, James Brown described how he intended to have anal sex with the kids; described in detail the sexual acts that he intended to perform on 5 year old A.M. when he got out of prison; described how he wanted to have sexual intercourse with 4 year old F.W. and to videotape the intercourse; and James Brown stated that he wanted and intended to photograph and videotape all the sex with all the kids.

Brown repeatedly directed, instructed, and encouraged Morey to take advantage whenever she was alone with children to take sexually explicit pictures of minors.  In a series of telephone calls from James Brown to Morey occurring over the Memorial Day weekend in May of 2010, James Brown directed, instructed, and encouraged Morey to take sexually explicit pictures and videos of A.M. over the course of that weekend.

In May and June of 2010, while receiving instructions, directions, and encouragement from James Brown, Kayla Morey used Brown's Samsung cellular telephone camera in order to videotape and photograph A.M., and to photograph P.W., engaged in sexually explicit conduct.  The photographs and videos of A.M. focused on the minor's vaginal area.  The photographs of P.W. were close-ups of the minor's vagina.

During a telephone conversation in 2010 between Brown and Morey and while Brown sat in prison, Morey described in detail for Brown the video scene that she recorded of A.M, at Brown's dirction, as Morey simultaneously viewed the video on the Samsung telephone.

Between May of 2010 and June of 2010, Morey transported videos and images of child

pornography involving minor A.M. that were stored on the Samsung telephone from Massachusetts to New York state, and which videos and images were produced at Brown's direction, instruction, and encouragement. Brown had directed Morey to have those videos and images available and ready for him to view once he was released from New York state prison.

Between May of 2010 and July of 2010, Morey, acting on instructions from Brown, possessed the child pornography videos and images of minors A.M. and P.W. for the purpose of safe keeping those materials and so as to deliver them to Brown once Brown was released from prison. On at least one occasion, Morey viewed and accessed the child pornography videos on the Samsung telephone while speaking with Brown on the telephone and describing in detail for Brown the contents of the video that she produced at his direction.

# IV

## GOVERNMENT'S SENTENCING RECOMMENDATION

The minimum sentence that this Court may impose is 15 years imprisonment. The maximum sentence that this Court can impose is 120 years imprisonment. The advisory guidelines call for an imprisonment term of Life. The government recommends that the Court sentence defendant Brown to at least 30 years (360 months) imprisonment and a Life term of supervised release.

Brown's conduct in this case is disturbing and deviant. Brown can best be described as a sexual psychopath. He appears to enjoy and savor the sexual torture of children as young as a few years old. He repeatedly discussed with Morey how when Brown was released from prison he would engage in sexual acts with A.M., P.W., A.W., and F.W., all of whom were under the age of six years old. Brown conspired with and manipulated Kayla Morey to produce child pornography

for Brown even as he was still serving a state prison sentence.  From prison, Brown coached and instructed Morey to take pictures and videos of several minors in sexually explicit conduct so that Brown could enjoy the images and videos when he was released from prison.  Brown expected to be paroled in December of 2010.  Brown gave Morey instructions as to what kind of sexual footage he wanted her to record with his cellular telephone camera.  During one of the telephone conversations with Morey, James Brown, while sitting in his prison cell, even had Morey describe in detail the video images of A.M. that Morey had produced per Brown's instructions.  Brown perpetrated these crimes all while behind prison bars.

Not only is Brown a predator and a pedophile, he is also well on his way to being a career criminal.  In 1997, Brown was convicted of Arson in the Second Degree for setting fire to an occupied residence in Utica, New York.  During the plea proceedings, Brown admitted to also setting arson fires to two other residential properties in the Utica area, in addition to committing a burglary.  Brown received an indeterminate prison term of 7-14 years in state prison.  After being paroled, Brown's parole was revoked on two separate occasions for violating his parole conditions and each time Brown was sent back to state prison.  The last parole violation resulted from Brown's arrest for having sexual intercourse with a fifteen year old teenager.  In addition to constituting a parole violation, this arrest also resulted in Brown's conviction for Sexual Misconduct.

Adding to all of this is the fact that Investigators have determined that James Brown, while indicted on this federal case and while being detained on the federal charges, engaged in conduct that is very similar to the conduct that Brown committed with Kayla Morey.  Investigators have determined that while detained on these federal charges in a county jail, Brown has communicated with Nicole Snay via letters and telephone calls.  Snay has daughters ages 9 and 12.  During some

**Page 7**

of these communications, Brown requested that Snay take sexually explicit photos of her minor aged daughters for him.   Additionally, in some communications Brown discussed with Snay about allowing Brown to engage in sexual acts with Snay's minor daughters, especially Snay's 12 year old daughter.   In some communications, Brown discussed with Snay the type of sexual acts that Brown would like to perform on Snay's children and to have Snay perform on the children while Brown watched.

The PSR sets forth specific details of the communications between Brown and Snay.   The government provided to defense counsel and the U.S. Probation Office a written sworn deposition of Nicole Snay (reproduced in the PSR); letters and excerpt pages of letters written by Brown to Nicole Snay and sent by Brown to Snay (excerpts contained in the PSR); summary chart of some of more relevant letter passages written by Brown to Snay;  summary chart of some of more relevant telephone conversations between Brown and Snay; and, a DVD containing all the telephone calls from the county jail.

Brown's most recent conduct and communications with Snay and his attempts to have Snay take sexually explicit photos of Snay's daughters ages 9 and 12, conclusively demonstrates just how dangerous a predator Brown remains even while incarcerated.  James Brown is out of control.  He has no intention of curbing his perverse behavior.  He has no intention of conforming to the laws of society.  James Brown is solely interested in satisfying James Brown's deviant sexual interests.

The sentence that the government recommends here is  sufficient, but not greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2).

"[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v.*

*United States*, 552 U.S. 85, 89 (2007); *see*, *e.g.*, *Gall v. United States*, 552 U.S. 38, 46 (2007) (Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").   Moreover, within-guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act – "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).[1]

James Brown deserves to be punished severely for the heinous crimes as to which he has pleaded guilty and admitted his guilt.  James Brown should be incarcerated for a very, very long time  in order to protect society from James Brown.  Therefore, the government recommends that the Court sentence defendant Brown to at least 30 years (360 months) imprisonment and a Life term of supervised release.


Respectfully submitted this [21st] day of February  2012,

RICHARD S. HARTUNIAN
United States Attorney

       /S/


By: Miroslav Lovric
Assistant United States Attorney

---

[1]  The government reserves the right to respond to defense arguments.  Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.  *See*  Fed R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

**CERTIFICATE OF SERVICE FOR ELECTRONIC CASE FILING SYSTEM**

       I hereby certify that on February 21, 2012, I electronically filed with the NDNY Clerk of the District Court using the CM/ECF system the above-referenced document(s) in connection with the above-referenced case.  The CM/ECF system automatically sent electronic notifications of such filing to the attorneys of record in this case, as maintained by the District Court Clerk's Office, AND who are properly registered in the CM/ECF system for the NDNY as required pursuant to NDNY General Order #22.  As for any attorney of record in this case who is not registered in the CM/ECF system for the NDNY, the government has caused to be mailed or faxed to that attorney either the actual CM/ECF electronic notification/e-mail as received from the CM/ECF system by the government and/or the actual documents being filed.  Therefore, the non-registered attorney(s) will receive the same electronic ECF notice with the same information as will the attorney(s) who is/are registered in the CM/ECF system.

                                            /S/
                                        Miroslav Lovric
                                        Assistant U.S. Attorney